■ MAIN EVALUATIONS, INC., Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 107214.) [869 NYS2d 672]—

Cardona, P.J.

In October 2001, claimant entered into two contracts with the New York State Office of Temporary and Disability Assistance (hereinafter OTDA) whereby, for the period between January 1, 2002 and December 31, 2004, claimant agreed to perform consultative medical evaluations for individuals seeking Social Security disability benefits in the Buffalo and Rochester areas. By two letters dated January 25 and February 12, 2002, claimant was notified by OTDA that it was terminating the contracts due to claimant's alleged noncompliance with several required provisions of the contracts by, among other things, failing to inform OTDA that claimant's "founder" and chief medical officer, Arvinder Sachdev, was the subject of professional disciplinary proceedings brought by the Office of Professional Medical Conduct that ultimately resulted in the suspension of his medical license.[1]

1. Following a lengthy investigation beginning in 1997, Sachdev, a New York-licensed physician specializing in gastroenterology, was charged by the Office of Professional Medical Conduct in March 2001 with eight specifications of professional misconduct related to his private practice in violation of Education Law § 6530. In November 2001, Sachdev pleaded no-contest to practicing medicine with negligence on more than one occasion and maintain-

Contending that the contracts were wrongfully terminated, claimant commenced an action in Supreme Court in Erie County. However, the Fourth Department ultimately dismissed the complaint, holding, among other things, that the appropriate forum to litigate claimant's alleged wrongs was in the Court of Claims (*Main Evaluations v State of New York*, 296 AD2d 852, 853 [2002], *appeal dismissed and lv denied* 98 NY2d 762 [2002]). Thereafter, claimant brought this claim in the Court of Claims against defendant alleging that OTDA breached the contracts and violated claimant's constitutional right to equal protection of the law. Following joinder of issue, a trial on the issue of liability was held. The court rendered judgment in defendant's favor dismissing the claim, prompting this appeal.

Initially, we are unpersuaded that the Court of Claims erred in finding that OTDA properly terminated the contracts as a result of claimant's responses to certain questions in the background questionnaires filled out as part of the bidding process and submitted to OTDA in May 2001. Specifically, in terminating the contracts, OTDA asserted that claimant falsely answered "No" to question 2 (v) of the questionnaires, which provides, in pertinent part: "Within the past five years has the firm, any affiliate (including a wholly or partially owned subsidiary) and predecessor company or entity, any owner of [five percent] or more of the firm's shares, any director, officer, partner or proprietor or any employee alleged to have been acting on the part of the offeror been the subject of . . . any citations, notices, violation orders, pending administrative hearings or proceedings or determinations of violations of federal, state or local health laws, rules or regulations?" Notably, clause 5 of the certification included next to the signatures affixed to the questionnaires expressly sets forth the contractor's acceptance that "submission of false or misleading information will constitute grounds for [OTDA] to terminate [the] contracts." Since the formal disciplinary charges against Sachdev were brought in March 2001, several months before the contract proposals containing the questionnaires were submitted, claimant was clearly aware of the pending administrative proceeding alleging several specifications of professional medical misconduct pursuant to Education Law § 6530 (*see* Public Health Law §§ 230, 230-a) when it responded to question 2 (v). Thus, the proof supports the Court of Claims' finding that claimant answered

---

ing inadequate records. He consented to a two-year suspension of his medical license, which suspension was stayed pending his compliance with various monitoring requirements.

falsely in violation of clause 5 of the questionnaire certifications.[2]

Additionally, we agree that OTDA was justified in terminating claimant's contracts for cause due to its failure to notify OTDA of a "substantial contract-related problem" as required under section III (11) of the contracts. Notwithstanding the fact that Sachdev did not perform medical evaluations for claimant with respect to the subject contracts, the Court of Claims concluded that the proof established that Sachdev was an officer or director of claimant who played an integral role in decision-making and, therefore, the professional disciplinary proceedings against him posed a substantial contract-related issue. Claimant maintains, however, that Sachdev was not sufficiently affiliated or connected with its operations to justify a finding that the disciplinary proceedings brought against him could be construed as "contract-related."

In our view, Sachdev's integral role with respect to claimant is well-documented in this record, as is his long history of working with OTDA in various capacities. The record shows that Sachdev was originally employed by OTDA from 1987 to 1992 as a "quality assurance person" and continued to work for the agency on a noncontract basis after he left its employ to enter private practice. Sachdev then joined a professional services corporation, Independent Medical Opinions, P.C. (hereinafter IMO), which conducted medical examinations for insurance companies and workers' compensation claims. After OTDA became dissatisfied with IMO's performance, Sachdev reached an agreement with IMO's partners to take over the OTDA contract. Thereafter, in December 1998, Sachdev formed a wholly-owned professional services corporation, Main Medical Evaluations, which listed him as sole shareholder, director and officer. IMO's assignment of the OTDA contract to the new company was approved.

Thereafter, Sachdev decided in October 1999 to change the corporate form in which the business was conducted from a professional corporation to a business corporation run by non-medical personnel, namely his wife and brother-in-law. Accordingly, a certificate of incorporation for claimant was filed in October 1999 and, in support of Sachdev's request to OTDA to

---

**2.** Notwithstanding claimant's contention to the contrary, the Court of Claims did not err in finding that OTDA relied upon the representations made in response to question 2 (v) of the questionnaires when awarding the contracts to claimant. Indeed, there was ample testimony produced indicating that, had OTDA been aware of the professional disciplinary proceedings pending against Sachdev, it would not have awarded the contracts to claimant.

allow the prior contract to be assigned to claimant, Sachdev's attorney wrote a letter to OTDA dated October 29, 1999, assuring OTDA that the operations of the new corporation would be the same and that claimant would "have one officer, one director and one stockholder, all of whom will be . . . Sachdev." Sachdev was copied on the correspondence and did not object to the representations therein. Nevertheless, on that same day, claimant effected its initial issuance of stock, with 4% to Sachdev and the remainder to his wife. Although Sachdev signed those stock certificates as secretary and his wife signed as president, Sachdev acknowledged that he thereafter occasionally referred to himself as claimant's president and also used that title in signing certain documents exchanged with OTDA regarding the assignment of the prior contract to claimant. Thereafter, in January 2001, Sachdev's wife became claimant's president and 100% shareholder while Sachdev indicated he was to continue as a salaried employee until December 31, 2001. However, the record indicates that, in January 2002, Sachdev continued to attend meetings with OTDA and signed checks on behalf of claimant.

Viewing the proof in the record as a whole, we conclude that Sachdev's pivotal status as a director or officer of claimant throughout the relevant period was sufficiently established, and the Court of Claims's determinations to that effect deserve deference (*see Levine v New York State Thruway Auth.*, 52 AD3d 975, 977 [2008]). Accordingly, OTDA was within its rights in terminating the contracts based on the aforementioned grounds.

Finally, we are unpersuaded by claimant's contention that it was denied equal protection of the law as a result of OTDA's separate finding that the contracts could be terminated because claimant violated Education Law § 6521 by failing to organize as a professional corporation (*see* Business Corporation Law art 15), even though OTDA previously allowed other noncompliant organizations a grace period in which to reorganize and meet this requirement. Notably, "an equal protection violation based upon selective enforcement arises where first, a person (compared with others similarly situated) is selectively treated and second, such treatment is based on impermissible considerations such as . . . intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person" (*Matter of Ken Mar Dev., Inc. v Department of Pub. Works of City of Saratoga Springs*, 53 AD3d 1020, 1024 [2008] [internal quotation marks and citation omitted]; *see Matter of Northway 11 Communities v Town Bd. of Town of Malta*, 300 AD2d 786, 788 [2002]). Here, claimant failed to present evi-

dence effectively disputing defendant's showing that an opportunity to reorganize was not provided to claimant solely due to the existence of other independent grounds for terminating claimant's contracts that could not be cured by that means. Given the proof that claimant's contracts were terminated for legitimate reasons, as opposed to impermissible ones, it is apparent that claimant was not "similarly situated" to other corporations offered an opportunity to reorganize and, therefore, an equal protection claim has not been established.

The remaining arguments raised by claimant and not specifically addressed herein have been examined and found to be without merit or unnecessary to reach given the above disposition.

Spain, Rose, Malone Jr. and Stein, JJ., concur. Ordered that the judgment is affirmed, without costs.